ACCEPTED
14-14-00889-CR
FOURTEENTH COURT OF APPEALS
HOUSTON, TEXAS
4/28/2015 2:41:06 PM
CHRISTOPHER PRINE
CLERK

# No. 14-14-00890-CR
# No. 14-14-00889-CR

FILED IN
14th COURT OF APPEALS
HOUSTON, TEXAS

4/28/2015 2:41:06 PM

CHRISTOPHER A. PRINE
Clerk

IN THE

COURT OF APPEALS

FOR THE

FOURTEENTH DISTRICT OF TEXAS

AT HOUSTON

Cause nos. 1372460 & 1379135
In the 232nd District Court
of Harris County, Texas

## DANIEL EDISON
*Appellant*

v.

## THE STATE OF TEXAS
*Appellee*

APPELLANT'S BRIEF ON APPEAL

PATTI SEDITA
State Bar No. 00787484
One Sugar Creek Ctr Blvd.
Suite 1045
Sugar Land, TX 77478
281.313.4225
*Counsel for Appellant*

**ORAL ARGUMENT NOT REQUESTED**

## STATEMENT REGARDING ORAL ARGUMENT

Pursuant to **TEX. R. APP. PROC**. 74, Appellant does not request oral argument in this case.

## IDENTIFICATION OF THE PARTIES

In order that the members of this Court may determine disqualification and recusal under the Texas Rules of Appellate Procedure 14 and 14a, Appellant certifies that the following is a complete list of the parties, attorneys, and other persons with an interest in the outcome of this lawsuit:

| | |
|---|---|
| Honorable Mary Lou Keel | *Presiding Judge in the 232nd District Court* |
| Patti Sedita | *Defense counsel on appeal* |
| Tanya Terry | *Defense counsel at trial* |
| Charles Brodsky | *Assistant District Attorney at trial* |
| Alan Curry | *Assistant District Attorney on appeal* |
| Daniel Edison | *Appellant* |

# TABLE OF CONTENTS

**ORAL ARGUMENT NOT REQUESTED**.................................................... i

**STATEMENT REGARDING ORAL ARGUMENT** ............................................ ii

**IDENTIFICATION OF THE PARTIES**................................................... ii

**TABLE OF AUTHORITIES** ......................................................... iv

**PRELIMINARY STATEMENT** ....................................................... 1

**STATEMENT OF THE FACTS** ...................................................... 2

**POINTS OF ERROR** ............................................................. 2

**REVIEW OF THE RECORD AND ARGUMENTS**........................................... 3

**CONCLUSION AND PRAYER FOR RELIEF** .............................................. 17

**CERTIFICATE OF SERVICE** ....................................................... 18

**STATEMENT OF WORD COUNT** ..................................................... 18

# TABLE OF AUTHORITIES

**Cases**

*Anders v. California*, 396 U.S. 736 ........................................................ 3

*Hawkins v. State,* 112 S.W.3d 340, 344 (Tex.App.-Corpus Christi 2003, no pet.) . 3

*Mizell v. State,* 119 S.W.3d 804, 806 (Tex. Crim. App. 2003). ............................ 13

*Strickland v. Washington*, 466 U.S. 688, 694-95, 104 S.Ct. 2052, 2068 (1984) .. 14

**Statutes**

TEX. CODE CRIM. PROC. Art. 26.13 ........................................................ 12

TEX. CODE CRIM. PROC. art. 1.15 ........................................................ 13

**Rules**

TEX. R. APP. PROC. 74 ........................................................ ii

TEX. R. APP. PROC. 9.4 ........................................................ 19

# PRELIMINARY STATEMENT

Appellant was indicted in cause numbers 1372460 on January 23, 2014 and in 1379135 on March 8, 2013, for the offenses of aggravated robbery. (Clerk's record, p. 11,12). Appellant elected to enter a plea of guilty, on June 24, 2014, without a plea recommendation, allowing the judge to sentence him after a pre sentence investigation was complete. (Clerk's record, p. 144,138). After a hearing on October 2, 2014, the judge assessed punishment at 45 years confinement in the Texas Department of Criminal Justice, Institutional Division. (Clerk's record, p. 157, 151). The trial court signed the judgment and sentence on that same day. (Clerk's record p. 157,151). On October 21, 2014 Appellant gave notice of appeal. (Clerk's record, p. 160, 154).

**STATEMENT OF THE FACTS**

There is no statement of facts for this appeal, as it was a plea of guilty and a sentencing hearing. The factual summary from the presentence report is contained in the body of the record review below.

**POINTS OF ERROR**

There are no points of error.

# REVIEW OF THE RECORD AND ARGUMENTS

After a thorough review of the record, Appellant's counsel on appeal is unable to find any errors which she, in good faith, can urge warranting a reversal of this conviction. Counsel is aware that she had a duty to advance arguable grounds of error. ***Anders v. California***, 396 U.S. 736, 87 S.Ct. 1396, 19 L.Ed.2d 493. Because Appellant entered a guilty plea, appellate review is limited to: (1) potential jurisdictional defects; (2) the voluntariness of Appellant's plea; (3) error that is not independent of and supports the judgment of guilt; and (4) potential error occurring after the guilty plea. *See **Hawkins v. State**,* 112 S.W.3d 340, 344 (Tex.App.-Corpus Christi 2003, no pet.).

## ISSUE ONE:  A review of error in the proceedings

### *(1) Jurisdictional Defects*

Our review of the record reveals that the trial court had jurisdiction over the case. The events occurred in Harris County Texas. There is no arguable reversible ground of jurisdictional error.

## *(2) Voluntariness*

The presentence investigation report contains a summary of the events

contained taken from the police reports:

> The following is a summarized version of the Houston Police
>
> Department (HPD) offense report number 1466564l2-U:

On Tuesday, November 20, 2012, at approximately 9:41 a.m., Officer Blankinship-Reeves and her partner, Officer R. Palacios, were dispatched to the Cash America Pawn shop located at 3818 Broadway in response to an activated hold-up (panic) alarm.

When the officers arrived, they were met in the parking lot of the business by twenty-nine year old Crystal Soliz, who stated she had been carjacked and her white, 2003 Toyota Corolla four door sedan had been stolen.

Further investigation disclosed a male suspect, later determined to be thirty-three year old Daniel Reynulfo Edison, the defendant, entered the Cash America Pawn shop armed with a pistol and wearing a camouflage mask. The defendant ordered the employees and customers to lie on the floor as he demanded money and jewelry. During this robbery, the defendant fired a shot which struck the store manager, forty-six year old Jesus Martinez in the leg. The defendant then gathered money and jewelry from the store and fled on foot. Once he was outside the business, he carjacked Ms. Soliz as she sat in her car in the parking lot, and fled the scene.

Houston Fire Department Emergency Medical Services ambulance #29 responded to this business and transported Mr. Martinez to Hermann Hospital. Officers observed Mr. Martinez to have a gunshot wound to his lower left leg.

Officers notified the Robbery Division and broadcast a description of the defendant and the complainant's stolen car to other units in the area.

Sergeant Doreck, Sergeant King, Officer Harrell and Officer Varela of the Robbery Division responded to this call and began their investigation. Officer Rachel of the Robbery Division went to Hermann Hospital to interview Mr. Martinez. A crime scene unit was also dispatched to process the scene for physical evidence.

A few minutes later, Ms. Soliz's stolen vehicle was located by officers in the 7900 block of Hartford Street, a short distance from where it had been stolen. Officers responded to the scene and after determining the suspect was not present, officers secured the vehicle for processing by a crime scene technician.

Officer Gonzalez spoke with the residents of nearby houses and learned one of them, fifty-nine year old Vanderbilt Smith, observed the defendant park the stolen vehicle in the street and get into a white Ford F-150 pickup truck which was occupied by two Hispanic males. Another resident, seventy-six year old Doris Hedley stated she saw a male with a black bag get into the pickup truck before it drove away.

The stolen vehicle was later towed to the Police Department's impound lot for forensic processing.

Officer C. D. Duncan, a crime scene technician, was assigned to process the crime scene for possible evidence. Officer Duncan recovered and processed a Mag-Lite flashlight for DNA and latent fingerprints; recovered a fired "RP 40 S&W" cartridge case from beneath the first cash register; recovered a bloodstained sock which had a hole consistent with a bullet hole near its top edge; recovered a fired bullet from next to the cash register; and, recovered a rubber floor mat which had an entrance and exit bullet hole. Based on the evidence found at the scene, Officer Duncan stated the defendant fired one round which struck Mr. Martinez in the leg before striking the floor and ricocheting off the floor and eventually landing on top of the cash register.

The store's surveillance video was reviewed and showed an armed, gloved and partially masked suspect entering the pawnshop at 9:31:26 a.m. The suspect is seen arriving on foot and committing the offense before he is seen carjacking Ms. Soliz and stealing her vehicle.

*Summary of interviews with witnesses*

Officer Varela, the lead investigator, was assisted by Officer Harrell in conducting interviews with the store employees and other witnesses.

Officer Varela interviewed thirty-three year old Yesika Guerra, who stated she was assisting a customer when the suspect entered the store. She stated she heard the suspect screaming, "Give me the money!" and heard the gunshot when the suspect fired his gun inside the store. Ms. Guerra stated she hid under the counter and did not get a good look at his face. Ms. Guerra stated she believed the suspect brought

a flashlight with him which he left behind on a shelf.

Fifty-three year old Norberto Silva stated he was shopping and was being helped by Ms. Guerra when the suspect entered the store. Mr. Silva stated he immediately got on the floor when he heard the suspect yell for everyone to get down. Mr. Silva stated the suspect put his gun to his head at least twice as he moved between him and the counter where he was demanding money.

Thirty-three year old Julio Hernandez, who worked at a transmission company located across the street from the pawnshop, stated he saw a male wearing a mask and carrying a gun run towards the pawn shop. Mr. Hernandez stated the male was crouching as he ran and was carrying a bag. Mr. Hernandez stated he saw the same male leave in a white Toyota. Mr. Hernandez stated he saw an unknown Hispanic male running from the store and gave him his cell phone and told him to call the police. Mr. Hernandez stated he went inside the pawnshop where he learned the male had robbed the store and shot the manager.

Twenty-three year old Jose Mares stated he parked his car in front of the pawn shop and left his girlfriend, Ms. Crystal Soliz, sitting in his car. Mr. Mares stated he ran out of the pawnshop when he saw the defendant in the business with a gun and saw several people dropping to the floor. Mr. Mares stated he ran around the building and did not see the defendant leave.

The store manager, Mr. Jesus Martinez, was interviewed at Hermann Hospital by Officer Rachel. Mr. Martinez stated he was working behind the counter when the defendant ran into the store wearing a mask and holding a pistol. Mr. Martinez stated he feared for his life as the defendant demanded money and jewelry. Mr. Martinez stated he was getting jewelry for the defendant when defendant shot him. Mr. Martinez stated the defendant fled in a car he stole from a customer outside the pawn shop. He also stated he tried not to look at the defendant and could not identify him.

On November 20, 2012, Officer Varela completed a Crime Stoppers bulletin which was released, together with a surveillance photograph of the defendant, to the local media.

On December 4, 2013, Officer Varela received a Crime Stoppers tip identifying Daniel Reynulfo Edison as the person who committed this offense.

On December 28, 2012, Daniel Reynulfo Edison was arrested for his part in an aggravated robbery which occurred at the Flamingo Super Market located at 5202

Canal Street, Houston, Texas. *(This robbery is described in Houston Police Department offense report number 163036112-R which is summarized below.)*

After being arrested, the defendant confessed to participating in this robbery. A second person, Shane Mikel, was also arrested and charged while a third person remained at large.

On February 13, 2013, Officer Varela interviewed the defendant at the Harris County Jail. After being advised of his legal warnings, the defendant agreed to speak with Officer Varela without an attorney being present. During this interview the defendant admitted committing the robbery of the Flamingo Super Market but denied being involved in the robbery of the Cash America Pawn shop.

On February 14, 2013, Officer Varela interviewed co-defendant Shane Mikel at the Harris County Jail. After being advised of his legal warnings, co-defendant Mikel agreed to speak with Officer Varela without an attorney being present. Co-defendant Mikel denied participating in or of having any knowledge of any robbery.

After interviewing the defendant and co-defendant Mikel, Officer Varela prepared a photo array which included a photograph of the defendant. On February 15,2013, the photo array was shown to Mr. Martinez, who, after viewing the photo array, positively identified the defendant as being the person who robbed and shot him on November 20, 2012.

Officer Varela called the Harris County District Attorney's Office and spoke with Assistant District Attorney Brodsky, who, after hearing the facts of this case, agreed to accept a charge of Aggravated Robbery with a Deadly Weapon against the defendant, Daniel Reynulfo Edison.

The following is a summarized version of the Houston Police Department

(HPD) offense report number 163036112-R:

On Friday, December 28, 2012, at approximately 1:29 p.m., Officer Robles was flagged down by a citizen, fifty-five year old Rafael Gonzalez, who reported there was an aggravated robbery in progress at the Flamingo Super Market located at 5202 Canal Street. Mr. Gonzalez pointed towards the store and stated, in Spanish, "That's my truck, they are taking my truck." Mr. Gonzalez then opened the door of Officer Robles's patrol car and begged for protection. Mr. Gonzalez told Officer

Robles the robbers had a big AK-47. Officer Robles told Mr. Gonzalez to wait for him as he began to follow the suspects in Mr. Gonzalez stolen Nissan Frontier.

Officer Robles alerted his dispatcher as he followed the stolen Nissan into the 100 block of N. Edgewood. Officer Robles observed three males, all of whom were wearing blue jeans and sweaters, jump out of the vehicle. Officer Robles drove up to the three males, drew his service weapon and ordered them to lie on the ground. The driver, later identified as thirty- three year old Daniel Reynulfo Edison, the defendant, threw himself on the ground and placed his hands on top of his head. The two other suspects began fleeing on foot. As they fled, Officer Robles observed one of them, later identified as thirty-four year old Shane Allen Mikel, throw some objects over a fence near where the stolen Nissan was recovered.

Officer Robles arrested the defendant and placed him into the back seat of his patrol car. Officer Robles asked the defendant if either of his co- defendants were armed and the defendant told him, "No, the gun on the back seat of the truck is mine." Officer Robles then looked inside the truck and found an AK-47 rifle.

Additional units responded to the scene and began searching the area for the two remaining suspects. Officers also completed an accident report after learning the stolen Nissan truck had struck a parked Ford F-250 pickup truck. The owner of the damaged truck stated he could not identify the driver or the occupants of the stolen Nissan truck because he had been inside and had not personally witnessed the accident.

*Interviews with the compiainant(s) and witnesses*

The owner of the Flamingo Super Market, Mr. Abu Momin, stated he had not been present when the robbery occurred and had been called by his employees.

The complainant, forty-five year old Inayat Kasam Meredia, told officers he had been working behind the counter with another employee, Mr. Rafik Meridia, when he saw three males enter the store. Mr. Meredia stated each of the three males had their face covered and the first suspect, later identified as the defendant, thirty-three year old Daniel Reynulfo Edison, pointed a rifle at him as they told everyone to get on the floor. Mr. Meredia stated one of the males jumped through a gap in the protective glass and went straight to the area where they kept the money. Mr. Meredia stated this male grabbed a shoebox which contained sixty thousand ($60k) dollars in cash. Mr. Meredia stated he then heard several shots being fired and the

three males were gone. Mr. Meredia could not say how many shots were fired; however, he stated the suspect shot the magnet on the door and broke the glass.

Another complainant, thirty-eight year old Rafik Kasma Meredia, stated he was working behind the counter when he saw three males run into the store brandishing weapons and demanding everyone get down on the floor. Mr. Meredia stated the three robbers had their faces covered and pointed their guns at everyone. Mr. Meredia stated one of the robbers jumped through the gap in the protective glass and entered the area where the money was kept. Mr. Meredia stated the robber took the box which contained the money and fled the store. Mr. Meredia stated he did not look up until he knew the three men had left; however, he reported hearing a shot outside the store.

The owner of the stolen Nissan Frontier, fifty-five year old Rafael Gonzalez, stated he had been standing outside the store when he heard several gunshots inside the store. Mr. Gonzalez stated he then saw three males running towards him who were all wearing masks and hoodies and blue jeans. Mr. Gonzalez stated the tallest of the trio pointed a rifle at him and demanded he give them the keys to his truck. Mr. Gonzalez stated when he refused to hand over his keys, the male pointed the rifle at him and fired one shot at his feet. Mr. Gonzalez stated he feared for his life and surrendered the keys to his truck. Mr. Gonzalez then ran towards Canal Street where he flagged down Officer Robles and reported the robbery.

A witness, Mr. Herazmo Herrero Garces, told Officer Carreon and stated he had seen a male walking at 310 Engel Street who was removing his clothing and throwing it away in a ditch. Mr. Garces described the person he had seen and his description matched the description of co- defendant Shane Mikel. The clothing was recovered and found to be a gray sweater with a red stripe, gloves and a black ski mask. Officer Carreon also recovered a set of brown gloves and a hunting mask. All of these items were retained as evidence and placed in the Police Department's property room.

*Description of the first scene (The Flamingo Super Market)*

The Flamingo Super Market is located at 5202 Canal Street, Houston, Texas. The building was a gas station whose entrance consisted of two aluminum framed glass doors. One of the pair of front doors had been damaged and there were shards of glass on the ground. Although the building was a gas station, this store also sold groceries, soft drinks and beer. The cash register area of the store was completely surrounded with bullet proof glass; however, the clerk did not secure the pass

through window which allowed the suspects to get behind the counter by jumping through the open window. The damage to the doors was caused when the suspects attempted to shoot out the electromagnetic lock the store employees activated which locked everyone inside the store. Officers recovered a total of seven (7) spent 7.62x39mm shells from inside the front door of the store and a bullet casing was recovered from where Mr. Gonzalez had been parked. Officers also found a bullet hole in the ground where Mr. Gonzalez had been standing next to his truck. Officers were able to obtain the store's surveillance video which documented both of these robberies.

Sergeant Ewing viewed the security video and noted three suspects entered the business. Two of them were wearing black tops and blue jeans while the third was wearing a gray top with blue jeans. All three suspects were wearing face coverings, two being camouflaged. The tallest of the trio, later determined to be the defendant, was armed with an AK-47 rifle and was the one who shot at the door. The robbery only lasted a matter of seconds and it appeared as if the suspects knew exactly where the money was kept. The video also showed the suspects carjacking Mr. Gonzalez for his Nissan Frontier. The defendant is seen forcing Mr. Gonzalez out of his vehicle at gunpoint and in the process he fired in his direction before taking his truck. The video shows the suspects leaving and seconds later Officer Robles's patrol car can be seen turning north onto North Edgewood Street.

*Description of the second scene (300 N. Edgewood Street)*

This is the location where the suspects crashed Mr. Gonzalez's stolen Nissan Frontier and fled on foot.

*Arrest o f Co-defendant Mikel*

Officer R. Trejo observed co-defendant Mikel walking in the 5900 block of Canal Street, detained him and took him to the second crime scene. Although he was not wearing the gray sweater with the red stripe or blue jeans, Officer Robles positively identified his as being one of the suspects he saw jump from Mr. Gonzalez's stolen truck and flee on foot.

The stolen Nissan Frontier was towed to the Police Department impound lot while all of the items recovered by officers were tagged in to the appropriate repository for safekeeping.

The defendant and co-defendant Mikel were transported separately to the Robbery Division where they were interviewed by Robbery detectives.

*Investigation by Robbery detective(s)*

Investigator N. D. Wallace of the Robbery Division was assigned this case for follow-up investigation.

Investigator Wallace reviewed the offense report and learned a total of four suspects (two known and two unknown) arrived at the complainant's business in a silver, mid 1990's Ford Escort four door sedan. Three of the four suspects entered the business armed with automatic weapons. The suspects pointed their weapons at the complainants and demanded the store's money. After obtaining the store's money, the suspects exited the store to find their getaway car had left them. The suspects carjacked Mr. Gonzalez for his vehicle during which the defendant discharged his weapon; however, the bullet did not strike Mr. Gonzalez. The suspects fled in the stolen vehicle and two of them were arrested by responding officers. The third and fourth suspects are still at large.

Investigator Wallace interviewed the defendant, Daniel Reynulfo Edison. After being advised of his legal warnings, the defendant agreed to speak with Investigator Wallace without an attorney being present.

The defendant stated he committed an aggravated robbery against the complainants and their place of business. The defendant stated, "We took the old man's truck." The defendant stated he shot the door of the business because they had gotten locked inside the store. The defendant stated he planned the robbery and only knew the person who got away as, "Chris." The defendant stated he and the others had been dropped off at this business but he refused to reveal the identity of their driver.

Investigator Wallace concluded his interview with the defendant and the defendant was booked into the City Jail pending transfer to the Harris County Jail.

Investigator Wallace then attempted to interview co-defendant Shane Allen Mikel. After being advised of his legal warnings, the co-defendant invoked his right to remain silent and requested an attorney. Investigator Wallace terminated the interview and the co-defendant was booked into the City Jail pending transfer to the Harris County Jail.

*Disposition of co-defendant(s):*

Shane Mikel was charged by the State with the offense of Aggravated Robbery with a Deadly Weapon in Cause number 1372459. On March 5, 2014, a jury in the

232nd found him guilty as charged and sentenced him to serve twenty years confinement in the Texas

(Supplemental Clerk's record, pp. 3-11).

It appears from a review of the plea papers and other parts of the record that Appellant's plea of guilty was freely and voluntarily given. Appellant was properly admonished, in writing, in accordance with the requirements set forth in **TEX. CODE CRIM. PROC.** Art. 26.13. State's exhibit number one on the plea contains a waiver of constitutional rights, agreement to stipulate, and judicial confession as well as a series of admonishments. (Clerk's records, p. 144-149, 138-143). Appellant and his lawyer signed the waiver of constitutional rights, agreement to stipulate, and judicial confession. (Clerk's records, p. 144-145, 138-139).

The plea of guilty was taken on the record. (Reporter's record, Vol. 1). Therefore, the review is not limited to the plea paperwork is contained in the clerk's record. During the entry of this guilty plea, Appellant was asked directly by the trial judge how he was guilty of the charged offenses:

| JUDGE: | Tell me how it is you're guilty of the November 20, 2012 incident. How did you commit aggravated robbery on that case? |
| APPELLANT: | I committed it with a firearm ma'am, on both of them. |
| JUDGE: | Where were you? Were you in a parking lot? |

APPELLANT:    No, ma'am. It was in a business. A store. It was in November. It was at a pawnshop.

JUDGE:    You went into a pawn shop by yourself?

APPELLANT:    Yes, ma'am.

JUDGE:    What time of the day?

APPELLANT:    In the morning.

JUDGE:    What did you do?

APPELLANT:    I went in told them to give me everything.

JUDGE:    Did you display your gun?

APPELLANT:    Yes, ma'am. I pulled out and I put it -- I pointed it at him and told him to give it up. He was scared and he gave it up and I was gone.

JUDGE:    The person that you pointed the gun at was that the clerk at the store?

APPELLANT:    Yes, ma'am.

JUDGE:    All right. The December 28, 2012, aggravated robbery how did you commit that crime?

APPELLANT:    There were a few of us in there. I went in with the A. K. 47 and I didn't point the gun at anybody on -- in that robbery but I was involved in it and my co-defendant went in there and got the money from him. I went by the door with the A. K. 47 and we got locked in and shot the doors out and some of them got away. I was caught.

COUNSEL:    Your Honor, this is a case that was tried with Markay Stroud, Shane Mikel the robbery he's discussing.

APPELLANT:    And I was caught on that same day on that robbery.

JUDGE:    What kind of location was that?

Page13

APPELLANT: It was in Second Ward ma'am at a meat market.

JUDGE: Was this the place over on Navigation?

APPELLANT: Yes, ma'am.

(Reporter's Record, Vol. 1, 2-5).

Because Appellant entered his guilty plea on the record and allocuted to the offenses charged, as well there being no error in the paperwork, nothing that indicates Appellant did not understand the rights he was waiving at the time of the entry of his plea. Additionally, Appellant admits his guilt in the PSI report. (Clerk's supplemental record, p. 12-13). He also admits his guilt when testifying at the sentencing hearing. (Reporter's Record, PSI hrg volume, p. 7-9). As such, here is no legal argument to be made that Appellant's plea was not voluntary.

### (3) Error Independent of Conviction

A plea of guilty is not sufficient to support a felony conviction under Texas law. The State still bears the burden of proving the guilt of the defendant by introducing sufficient evidence to support the conviction. **TEX. CODE CRIM. PROC.** art. 1.15. The plea paperwork contains a judicial confession where Appellant admits to committing the charged offense of aggravated robbery. (Clerk's record, p. 144-149, 138-143). The admission of the judicial confession is sufficient to support the guilty plea. Therefore, there are no arguable grounds of appellate error independent of the conviction.

### *(4) Sentencing Error*

A sentence outside the maximum or minimum range of punishment is unauthorized by law and therefore illegal. *Mizell v. State*, 119 S.W.3d 804, 806 (Tex. Crim. App. 2003). The sentence assessed by the trial court was within the statutorily permissible range. The trial judge sentenced Appellant to forty five (45) years in the Institutional Division of the Texas Department of Criminal Justice. The range of punishment for aggravated robbery, a first degree felony as charged, was five (5) to ninety-nine (99) years or life in prison. Therefore there is no issue from the sentencing phase.

### ISSUE TWO: effective assistance of counsel

There is nothing in this record to indicate that but for actions on the part of trial counsel the outcome of the case at hand would have been different as required by the second prong of the *Strickland* test. *Strickland v. Washington*, 466 U.S. 688, 694-95, 104 S.Ct. 2052, 2068 (1984). *Strickland* requires that, to show ineffective assistance of counsel, an appellant must prove that his attorney's representation fell below an objective standard of reasonableness under the prevailing professional norms and that there is a reasonable probability that, but for those unprofessional errors, the result of the proceeding would have been different. *Id.* at 694-95.

All of the paperwork and testimony in the clerk's and reporter's records support Appellant understanding of what was happening and what the possibilities were during the sentencing hearing. Both the plea proceeding and the sentencing hearing were recorded.

Therefore based on this representation and on this record, it appears Appellant was not rendered ineffective assistance of counsel. As a result, Appellant not would prevail on this issue.

## CONCLUSION AND PRAYER FOR RELIEF

Based on a thorough review of the record, there are no grounds counsel can ethically argue constitute error in this case. The undersigned has forwarded a copy of this brief in this case to Appellant for his review. The undersigned has also sent Appellant a complete copy of the record. Please see the attached letter sent to Appellant explaining the legal issues in his case.

Respectfully submitted,

PATTI SEDITA
State Bar No. 00787484
One Sugar Creek Ctr Blvd.
Suite 1045
Sugar Land, TX 77478
281.313.4225
*Attorney for Appellant*

## CERTIFICATE OF SERVICE

I certify that I delivered a copy of the Appellant's Brief the Harris County District Attorney's Office, Appellate Division at 1201 Franklin, Houston, Texas 77002, *via efiletex.gov*, on this the 28th day of April 2015.

_____
Patti Sedita
Attorney for Appellant

## STATEMENT OF WORD COUNT

In compliance **TEXAS RULE OF APPELLATE PROCEDURE** 9.4, the number of words in the brief as counted by the word processing program used is 5606.

_____
Patti Sedita
Attorney for Appellant

**PATTI SEDITA**
**ATTORNEY AT LAW**
**One Sugar Creek Center Blvd., Suite 1045**
**Sugar Land TX 77478**
**SBOT number 00787484**
**Office: 281.313.4225**
**Fax: 866.827.2087**
**pfsedita@gmail.com**

April 28, 2015

Daniel Edison
TDCJ no. 01958042
Holiday Unit
295 IH-45N
Huntsville, TX 77320

Dear Mr. Edison:

I have finished working on your appeal. I am very sorry to tell you I do not have good news. Unfortunately, I do not see any legal errors in your case. There is no legal basis to argue that there is error in the judge's sentencing decision or that your lawyer was ineffective in the representation of you.

The appeal of a case is limited to what is in the trial record. I am sending you the complete trial record in your case. The trial record consists of the clerk's record (all of the documents that are filed with the clerk of the court), a supplemental clerk's record (the PSI report) and the reporter's record (all of what was said in court that was on the record). The review I do is limited to these volumes of records.

As I wrote to you earlier, the appeal of a plea of guilty is very limited. I addressed all possible areas of potential error in the brief I have filed, a copy of which is included with this letter. There is nothing on the record to indicate you entered your plea of guilty involuntarily or that there were any errors in the process.

The only other potential issue was whether or not your lawyer did the job required as defense counsel. I have reviewed the record and researched this issue.

Based on the record on appeal, your trial lawyer did all that was required.

Since I cannot see any legal way to argue your conviction should be reversed in this direct appeal process, I have filed what is called an *Ander's* brief. I have included a copy of the brief for you. This brief tells the Court of Appeals that I do not see any legal errors and cannot ethically argue for your conviction to be reversed.

When your lawyer files an *Ander's* brief, you are entitled to file a brief on your own if you believe there are legal points of error the court should address. You have thirty days to do that from the time I file the brief with the court, which was April 28, 2015. Your thirty day deadline is: **May 28, 2015**. You may notify the court that you need more time. You can contact the court by writing to the Fourteenth Court of Appeals, 301 Fannin, Houston, Texas 77002.

I have sent this to you by the fastest means possible to give you as much time as I can before that first due date arrives. I have included a copy of the complete appellate record and a motion to withdraw as your counsel. You will also get a copy of a motion to withdraw as your appellate lawyer. I am obligated to file a motion to withdraw so that you can proceed on your own if you wish to do so. You will notice you will get from me the motion to withdraw two more times. The law requires I send you these documents by two specific means. They will be marked as copies and will be identical to what is included in this package.

It is your right to file a brief yourself, but I do not believe there are any issues to address. I am truly sorry that I do not have any better news for you in your case but I am bound by the law and the trial record. I cannot make arguments that are outside that record. I hope you understand this. Please let me know the questions you have, about this process and other legal avenues you may wish to pursue.

Sincerely,

Patti Sedita
*Enclosure:*  *brief on appeal*
*Complete record below*
*Motion to withdraw*